[Nos. 43983-2-II; 43986-7-II.   Division Two.   February 20, 2014.]

JOYCE KELLEY, *Respondent*, v. PIERCE COUNTY ET AL.,
*Petitioners*.

*Mark E. Lindquist, Prosecuting Attorney*, and *Daniel R. Hamilton, Deputy*; and *Christopher W. Keay* (of *Johnson, Graffe, Keay, Moniz & Wick LLP*), for petitioners.

*Thaddeus P. Martin IV*, for respondent.

¶1   JOHANSON, A.C.J. — On discretionary review, we are asked whether quasi-judicial immunity should apply to Mark Skagren,[1] a guardian ad litem (GAL) appointed in a parental termination action who is alleged to have "used his authority, tasks, tools and premises of his job and assignment to stalk, prey [on], assault, batter and sexually harass" Joyce Kelley. Clerk's Papers (CP) at 2. Pierce County (County) and Skagren argue that the superior court should have applied quasi-judicial immunity and dismissed Kelley's

---

[1] The clerk's papers contain both "Skagren" and "Shagren" as spellings. "Skagren" is the spelling used in the superior court caption below and the court caption on appeal.

claims because (1) Washington courts have applied quasi-judicial immunity to GALs in the past and (2) the face of Kelley's complaint establishes that quasi-judicial immunity applies here. In the published portion of our opinion, we hold that Skagren is not entitled to quasi-judicial immunity when acting outside of his statutory GAL functions and under the facts alleged in Kelley's complaint and contained in her declaration; accordingly, the superior court was correct in not dismissing her claims. We affirm.

¶2 In the unpublished portion of our opinion, we reject Kelley's argument that we should strike the County's appellate brief because it does not adequately assign error. However, we order $500 in sanctions against the County for including extensive argument in its opening brief on collateral estoppel even though we specifically denied discretionary review of that issue and without even acknowledging our denial of discretionary review.

## FACTS

¶3 In June 2011, the superior court assigned Skagren as GAL to perform duties under RCW 13.34.100 in the context of a parental termination action. In December, Kelley petitioned the district court for a protection order to protect herself and her son from Skagren, claiming that he had unlawfully harassed her. She alleged that Skagren preyed on her as a vulnerable woman; he continuously called and texted her, including when he was under the influence of alcohol; stopped by her job even when she was not there; stopped by her home one night near midnight; and was not performing his GAL duties. She feared that Skagren would retaliate against her and her son in her termination case.

¶4 After a hearing, the district court denied her request and dismissed her petition. The district court noted that "[t]he work of Mr. Skagren at the time as a [GAL] permits, in fact, requires a guardian to make certain observations and investigations, and it appears that's what was going on. So this matter is dismissed." CP at 150.

¶5 About six months later, Kelley filed a complaint for damages against the County, Skagren, and "Jane Doe" Skagren, alleging that Skagren, as her court-appointed GAL, "used his authority, tasks, tools and premises of his job and assignment to stalk, prey [on], assault, batter and sexually harass" her. CP at 2. Kelley alleged causes of action (1) under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, for sexual discrimination and/or harassment, gender discrimination, hostile environment, disparate treatment, assault and battery, and unlawful retaliation; (2) for negligent hiring, training, supervision, and retention of Skagren; (3) for intentional infliction of emotional distress/outrage; and (4) for discrimination against families with children.

¶6 In lieu of an answer, the County moved to dismiss under CR 12(b)(6), alleging that Kelley's complaint failed to state a claim under the WLAD and that it was barred in its entirety by immunity and collateral estoppel. As part of the motion, the County also submitted Kelley's petition for an order of protection from the district court and the district court's order denying her a protection order. The County argued that (1) Skagren was acting within his GAL duties and was entitled to the protection of quasi-judicial immunity and (2) collateral estoppel applied because the district court denied Kelley's protection order petition after finding that she had failed to show "actionable activity" because Skagren "was <u>working as a GAL at times of these events</u>." CP at 21.

¶7 Kelley moved for a continuance under CR 56(f) in order to conduct discovery and appropriately respond to the County's motion, arguing that the County had essentially moved for summary judgment when it submitted materials outside the pleadings in support of its motion. Kelley argued that quasi-judicial immunity did not apply to sexual harassment claims, that Skagren was not engaged in a judicial function when he sexually harassed her, and that collateral estoppel did not apply because the protection order

proceeding involved an entirely different issue and was not a final judgment on the merits.

¶8 In her responsive declaration, Kelley made allegations similar to those that she had in the protection order matter. Kelley again explained that Skagren had continuously called and texted her, often after midnight, including when he was under the influence of alcohol; sent picture messages of himself holding alcoholic beverages and asking if he could buy her a drink; and stopped by her home and job even when she was not there and, when she was there, he never asked about her son. Moreover, in addition to the allegations Kelley made at the protection order hearing, Kelley also alleged that Skagren talked to her and touched her shoulders, legs, knees, and hair in an inappropriate and sexual manner, constantly pressured her to go on dates with him, offered her money and to help her get her driver's license reinstated, and said that she could "find some way to pay [him] back" in a sexual manner. CP at 50.

¶9 The superior court denied the County's motion to dismiss and certified that the case involved controlling questions of law as to which there is substantial ground for a difference of opinion and that immediate appellate review may materially advance the ultimate termination of the litigation. The order noted that the superior court had "reviewed the records and files in this case." CP at 108. Our court commissioner granted discretionary review as to the issue of quasi-judicial immunity and denied discretionary review on the collateral estoppel issue. Regarding collateral estoppel, our commissioner explained, "Unlike the immunity issue, collateral estoppel would confer only a defense against the claim of damages, not immunity from suit. And given the lack of authority to the contrary, the County and Skagren fail to show that the trial court committed obvious or probable error, so discretionary review under RAP 2.3(b)(1) or (2) is not appropriate." CP at 168-69.

## ANALYSIS

### DENIAL OF MOTION TO DISMISS

¶10 The County argues that the superior court erred by denying its motion to dismiss and rejecting its argument that quasi-judicial immunity created an absolute bar to liability here.[2] Specifically, the County argues that (1) Washington courts have applied quasi-judicial immunity to GALs in the past, even when acting outside of the courtroom, (2) the face of Kelley's complaint establishes that quasi-judicial immunity applies, and (3) Kelley's previous protection order litigation establishes that quasi-judicial immunity applies.[3] We hold that Skagren is not entitled to quasi-judicial immunity as a matter of law because if the facts alleged in Kelley's complaint and in her declaration are true, Skagren was not acting in a judicial or quasi-judicial function when he engaged in the complained-of actions. Accordingly, the superior court properly denied the County's motion to dismiss.

### A. STANDARD OF REVIEW

¶11 We apply the de novo standard of review to a superior court's decisions under CR 12(b)(6).[4] *Burton v. Lehman*, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005). Under CR 12(b)(6), dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery.' " *Burton*, 153 Wn.2d at 422

---

[2] Skagren and "Jane Doe" Skagren join in the County's appellate opening and reply briefs.

[3] This third argument cites to collateral estoppel law and principles. Under the ruling granting review, collateral estoppel issues are not properly before this court and we consider it no further.

[4] CR 12(b) provides, in part, "that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted."

(quoting *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). When a superior court considers matters outside the pleadings, a CR 12(b)(6) motion converts to a motion for summary judgment under CR 56. CR 12; *Sea-Pac Co. v. United Food & Commercial Workers Local Union 44*, 103 Wn.2d 800, 802, 699 P.2d 217 (1985). In this case, the County submitted additional materials to the superior court in its motion to dismiss and the court considered the whole record, including Kelley's additional responsive materials; therefore, we will treat the motion as one for summary judgment.

¶12 When reviewing an order for summary judgment, we engage in the same inquiry as the trial court. *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 407, 282 P.3d 1069 (2012). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A "material fact" is one on which the outcome of the litigation depends in whole or in part. *Anderson v. Dussault*, 177 Wn. App. 79, 88, 310 P.3d 854 (2013), *petition for review filed*, No. 89788-3 (Wash. Jan. 16, 2014). We construe all facts and reasonable inferences in the light most favorable to the nonmoving party, and we review all questions of law de novo. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005).

## B. QUASI-JUDICIAL IMMUNITY

¶13 Judicial immunity does not exist for the benefit of an individual judge, but to protect justice. *Lallas v. Skagit County*, 167 Wn.2d 861, 864, 225 P.3d 910 (2009); *Taggart v. State*, 118 Wn.2d 195, 203, 822 P.2d 243 (1992). Therefore, judicial immunity ensures that judges can administer justice without fear of personal consequences. *Lallas*, 167 Wn.2d at 864; *Taggart*, 118 Wn.2d at 203. Quasi-judicial immunity "attaches to persons or entities

who perform functions that are so comparable to those performed by judges that it is felt they should share the judge's absolute immunity while carrying out those functions." *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 99, 829 P.2d 746 (1992), *cert. denied*, 506 U.S. 1079 (1993); *Savage v. State*, 127 Wn.2d 434, 441, 899 P.2d 1270 (1995). Therefore, quasi-judicial immunity protects those who perform judicial-like functions to ensure they can also do so without fear of personal consequences. *See Lutheran Day Care*, 119 Wn.2d at 99; *Taggart*, 118 Wn.2d at 203.

■ ¶14 "When [quasi-judicial immunity] applies, it is an absolute bar to civil liability and necessarily leaves wronged claimants without a remedy." *West v. Osborne*, 108 Wn. App. 764, 773, 34 P.3d 816 (citing *Lutheran Day Care*, 119 Wn.2d at 99; *Babcock v. State*, 116 Wn.2d 596, 606-08, 809 P.2d 143 (1991)), *review denied*, 145 Wn.2d 1012 (2001). As a result, "caution should accompany any application of absolute immunity." *Lallas*, 167 Wn.2d at 864.

■ ¶15 To determine if immunity applies, Washington courts will look to the function the person is performing, rather than to the person who is performing it. *Regan v. McLachlan*, 163 Wn. App. 171, 179, 257 P.3d 1122 (2011) (citing *Lallas*, 167 Wn.2d at 865). This analysis may require a court to examine the functions of the official as set forth in statute. *See West*, 108 Wn. App. at 772-73. Under juvenile dependency and termination statutes, a GAL's function is to represent the child's best interest by investigating the child's situation and reporting to the court. Former RCW 13.34.030(10) (2011); RCW 13.34.105(1). Specifically, RCW 13.34.105(1) provides that the GAL shall

> (a) . . . investigate, collect relevant information about the child's situation, and report to the court factual information regarding the best interests of the child;
>
> (b) . . . meet with, interview, or observe the child . . . ; [and]
>
> . . . .
>
> (f) . . . represent and be an advocate for the best interests of the child.

And under RCW 13.34.105(2), a GAL "shall be deemed an officer of the court for the purpose of immunity from civil liability."

¶16 Our Supreme Court has applied quasi-judicial immunity to a GAL when the GAL was acting "as an arm of the court." *Barr v. Day*, 124 Wn.2d 318, 332, 879 P.2d 912 (1994). We have also applied quasi-judicial immunity to a GAL who was acting within the scope of his statutory duties. *West*, 108 Wn. App. at 773-74.

¶17 In *Barr*, Lewis Barr was severely injured in an on-the-job accident. 124 Wn.2d at 321. He and his wife, Ella Barr, brought a tort action against his employer and, with his GAL's recommendation, the parties settled the suit prior to trial. *Barr*, 124 Wn.2d at 321. Ella Barr later sued the GAL, arguing that he negligently approved the settlement. *Barr*, 124 Wn.2d at 321. The Supreme Court reversed this court, holding that the GAL was protected from liability as a matter of law by quasi-judicial immunity. *Barr*, 124 Wn.2d at 321. Citing a GAL's statutory duties, the Supreme Court explained that it was proper to view GALs solely as surrogates of the court in the approval of settlements when they are acting on behalf of incompetents in civil claims because such duties represent "an arm of the court." *Barr*, 124 Wn.2d at 332.

¶18 In *West*, Sharon Carter and William West both sought custody of their son in their dissolution proceeding. 108 Wn. App. at 766. The court-appointed GAL interviewed witnesses, consulted therapists, reviewed records, supervised visitation, testified, and filed reports, ultimately recommending that the child be placed with West. *West*, 108 Wn. App. at 767. During the investigation, the GAL's relationship with Carter was "strained," and the court eventually allowed the GAL to withdraw and restrained Carter and the GAL from contacting each other. *West*, 108 Wn. App. at 767. Carter then sued the GAL, alleging that the GAL had negligently recommended that the child be placed with West; had committed perjury; was incompetent

and failed to perform her duties; and had alienated her son from her. *West*, 108 Wn. App. at 767.

¶19 The GAL moved for summary judgment, arguing that she was immune under quasi-judicial immunity. *West*, 108 Wn. App. at 767-68. On appeal, we agreed. *West*, 108 Wn. App. at 766. We determined that the case was "the same as [*Barr*, *Adkins*,[5] and *Reddy*[6]]" in that the GAL was acting as an arm of the court at all times; therefore, she was entitled to quasi-judicial immunity. *West*, 108 Wn. App. at 774.

¶20 Under RCW 13.34.105(2), *Barr*, and *West*, a GAL is protected by quasi-judicial immunity as "an arm of the court" when performing his statutory duties. *Barr*, 124 Wn.2d at 332; *West*, 108 Wn. App. at 774. Because immunity exists to protect the functions one is performing, rather than the person who is performing them, when a GAL is not acting within his statutory duties, he is not acting as "an arm of the court" and cannot be entitled to quasi-judicial immunity. *Regan*, 163 Wn. App. at 179.

¶21 In order for quasi-judicial immunity to apply to Skagren, he must have been performing the GAL's function to investigate facts and to report facts during the conduct in question. Here, we must construe all facts and reasonable inferences in Kelley's favor as the nonmoving party. *Berrocal*, 155 Wn.2d at 590. Kelley alleged in her complaint and declaration that Skagren stalked, preyed on, assaulted, and sexually harassed her. Kelley further alleged in her declaration that Skagren repeatedly came to her home and her place of employment and asked her to go on dates with him without asking about her son; that he offered to give her money and to help her get her driver's license reinstated, saying in a sexual manner that she could "find some way to pay [him] back"; that he would often send her text messages after midnight, including picture messages of

---

[5] *Adkins v. Clark County*, 105 Wn.2d 675, 717 P.2d 275 (1986).

[6] *Reddy v. Karr*, 102 Wn. App. 742, 9 P.3d 927 (2000).

himself holding alcoholic beverages and asking if he could buy her a drink; and that he was very "touchy feely" with her and touched her shoulders, legs, knees, and hair in inappropriate ways. CP at 50-51. If these allegations are true, Skagren was not acting within a GAL's function when he engaged in this conduct and, therefore, would not be entitled to immunity.

¶22 The County argues that we must apply quasi-judicial immunity under the facts of this case for two reasons. First, the County claims that quasi-judicial immunity is not limited to in-court activities and the *West* court determined that a GAL is acting as an arm of the court " 'at all times.' " Br. of Appellant at 11 (quoting *West*, 108 Wn. App. at 774). Although the County is correct that in *West* we determined that the GAL was acting as an arm of the court at all times, we were referring to all times that were relevant in that case. 108 Wn. App. at 774. The phrase "at all times" cannot be taken out of context. We did not hold in *West* that a GAL is always protected or is never acting outside of his GAL duties. Such a result would be absurd.

¶23 In *West*, the mother's allegations against the GAL were that the GAL negligently placed the child with his father, that she had committed perjury, that she was incompetent to perform her GAL duties, and that she had alienated the child. 108 Wn. App. at 767. These allegations were aimed at what the GAL did while performing her GAL functions and were not like Kelley's allegations here that Skagren engaged in inappropriate stalking, preying, assault, and sexual misconduct against her outside of his GAL duties. The County also cites to *Reddy*, but again, that case was also a lawsuit against a GAL for how the GAL performed her GAL function. 102 Wn. App. at 744. There was no question that the GAL there was conducting her investigation and evaluation during the times that the mother relied on in her complaint. *Reddy*, 102 Wn. App. at 745-46. Therefore, her case was properly dismissed at summary judgment. *Reddy*, 102 Wn. App. at 753. But these two cases

578

are simply unlike Kelley's case because Kelley alleges that Skagren committed acts outside of his GAL function.

¶24 Second, the County argues that the face of Kelley's complaint admits that quasi-judicial immunity must apply because Kelley alleges that Skagren used his court-ordered function to commit the torts alleged. Although Kelley's complaint alleges that Skagren "used his authority, tasks, tools and premises of his job and assignment to stalk, prey [on], assault, batter and sexually harass Ms. Kelley," Kelley did not allege that Skagren was performing his court-ordered function when he committed the alleged torts. CP at 2. Therefore, Kelley's allegation that Skagren *used* his GAL position as his opportunity to commit the alleged torts against Kelley does not mean that he was acting within his statutory GAL functions when he stalked, preyed on, assaulted, and sexually harassed Kelley. Skagren is not entitled to be treated as an "arm of the court" automatically or as a matter of law, even though he may have used his position as a GAL to commit the alleged torts.

¶25 Accepting Kelley's allegations as true, we cannot say as a matter of law that Skagren was investigating facts or reporting facts to the court while assaulting and making sexual advances toward Kelley as described in her complaint and declaration. As a result, questions of fact exist as to whether Skagren was acting within his statutory or court-appointed functions when committing the alleged torts and, therefore, is entitled to quasi-judicial immunity. Accordingly, we affirm the superior court's decision denying the County's motion to dismiss Kelley's case.

¶26 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN and MAXA, JJ., concur.

Review denied at 180 Wn.2d 1019 (2014).